[Sac. No. 344.  Department Two.—December 12, 1898.]

J. G. ELLIOTT, Assignee, etc., Respondent, v. C. A. H. WAR-
FIELD, as Sheriff, etc., Appellant.

INSOLVENCY—ADJUDICATION—PRIOR LEVY UNDER EXECUTION—SUBSEQUENT
SALE.—Under the Insolvent Act of 1880, a levy under execution
against an insolvent debtor made within one month before the
adjudication of insolvency, is not dissolved or affected by such
adjudication, and the property levied upon may be sold under
the execution after such adjudication.

ID.—EFFECT OF PRIOR ATTACHMENTS.—The fact that there were prior at-
tachments in other suits for an amount in excess of the value
of the property, and also an attachment in the subsequent suit,
all of which were dissolved under the operation of the insol-
vent act, is immaterial, and does not prevent the subsequent
execution levy and sale in the last suit from being effective, in
the absence of any charge of actual fraud or collusion with the
insolvent, or of any act done by him with intent to give prefer-
ence to a creditor.

APPEAL from a judgment of the Superior Court of Merced
County, J. K. Law, Judge.

The facts are stated in the opinion of the court.

C. H. Marks, and Frank H. Farrar, for Appellant.

J. W. Knox, and Joseph Kirk, for Respondent.

McFARLAND, J.—Appeal upon the judgment-roll by defend-
ant from the judgment against him as sheriff, and in favor of
plaintiff as assignee of C. W. Agee, an insolvent debtor, for five
hundred and fifteen dollars and costs.   The only question on the
appeal is whether or not a certain adjudication of insolvency dis-
solved or affected the lien of an execution levy which had been
made by appellant before, but within one month of, the com-
mencement of the proceedings in insolvency, and the question
arises under the insolvent act of 1880.

On the 18th of March, 1895, in a suit commenced in

the superior court of San Francisco by John Feather-
ston, plaintiff, against the insolvent, C. W. Agee, de-
fendant, to recover three hundred and eighty dollars
and eighty-four cents, an attachment issued and was
levied by appellant, as sheriff, upon a certain stock of goods
belonging to said Agee. On the 20th of March, 1895, another
writ of attachment was issued out of the justices' court of San
Francisco in the case of Freestone Distillery Company, plaintiff,
against said Agee, for one hundred and forty-nine dollars and
sixty-two cents, and was levied by the appellant upon the
same property. On the 22d of March, 1895, Mary Minor com-
menced a suit against Agee in the superior court of Merced
county, where he resided, for something over two thousand dol-
lars, and in said action a writ of attachment was also issued and
levied upon said property. Such proceedings were had that on
April 2, 1895, Minor obtained judgment against Agee in said
action for two thousand three hundred and sixty dollars; and on
the same day an execution was issued upon the judgment and
levied upon the said property, and on April 10, 1895, the appel-
lant, as sheriff, under and by virtue of said writ of execution,
sold at public auction all the said property to said Mary Minor
for the sum of five hundred and fifteen dollars, which sum was
the value of the property thus sold. The appellant paid the five
hundred and fifteen dollars realized on the sale to Mary Minor.
On April 4, 1895, two days after the levy of said execution, Agee
filed his petition in insolvency in the superior court of Merced
county, and on said day was adjudged an insolvent by said court.
The respondent was afterward appointed assignee in the insol-
vency proceeding, and after having demanded of the appellant
that he pay to him, as assignee, the said five hundred and fifteen
dollars, and, the appellant having refused to do so, he commenced
this suit.

There is no doubt of the general rule that an adjudication in
insolvency does not dissolve or affect the lien upon final process
of the levy of an execution made prior to, and existing at the
time of, the commencement of the insolvency proceeding. Sec-
tion 17 of the Insolvent Act of 1880 provides that the assign-
ment by the clerk to the assignee shall vest title to the property
of the insolvent in the assignee, "although the same is then at-

tached on mesne process as the property of the debtor, and shall dissolve any attachment made within one month next preceding the commencement of the insolvency proceedings," and thus leaves a lien created by final process unaffected.　This is not only the clear meaning of the section, and has been held to be the meaning under the general authorities, but it was so expressly declared by this court in *Vermont etc. Co. v. Superior Court*, 99 Cal. 579.　In that case the court say: "By the levy of the execution upon the property of Black, prior to the filing of the petition in insolvency against him, the petitioner herein acquired a lien upon that property which would not be divested by his subsequent adjudication of insolvency. (*Howe v. Union Ins. Co.*, 42 Cal. 533.)　In the absence of any statute an adjudication in insolvency does not affect any lien upon the property of the insolvent existing at the institution of the proceedings for such adjudication, but the assignee takes the property of the insolvent subject to all such liens.　Section 17 of the Insolvent Act provides that the effect of the adjudication is to dissolve any attachment made within one month next preceding the commencement of the insolvency proceedings, and this designation is equivalent to an express declaration that it does not affect liens of any other nature."　Respondent does not deny that this is the general law, and admits that the rule would apply here if there had been no other attachments on the property at the time the execution in the suit of Mary Minor was levied; but he contends that the existence of these prior attachments for an amount in excess of the value of the property prevented the subsequent execution levy from being effective, and that the dissolution of the attachments by the proceedings in insolvency did not inure to the benefit of execution creditors.　He has cited some authorities by inferior federal courts, under the federal bankruptcy law, as supporting his contention, as for instance:　*In re Klancke*, 4 Nat. Bank Reg. 648; *In re Steele*, 16 Nat. Bank Reg. 106; *Johnson v. Rogers*, 15 Nat. Bank Reg. 1; and *Case of Biesenthal*, 15 Nat. Bank Reg. 228; and *Case of Badenheim*, 15 Nat. Bank Reg. 370.　These cases are not all harmonious on the subject, but some of them seem to give support to respondent's contention.　We have not been referred to any case in the supreme court of the United States holding any such doctrine.　The reasoning of those cases

cited by respondent which seem to give color to his contention is
not satisfactory to us. The conclusions arrived at in those cases
seem to be based upon a consideration of the fact that the prior
attachments were for an amount equal to, or exceeding, the value
of the property, and upon a sort of notion that in such a case
there could be no effective levying of the execution until the at-
tachments had been in some way removed. But the fact that
there were prior attachments to any amount seems to us to be
immaterial. "When goods are held under one writ, they are also
held under all other writs that may come to the hands of
the same officer. The mere receipt of a second execution
operates as a levy of the property already in the officer's
hands under a former writ." (Freeman on Executions, sec. 267,
and cases there cited.) Moreover, it is difficult to see how it
could be determined that prior attachments in cases which
never went to judgment were equal to the whole, or any
part, of the property attached. There may have been
no legal causes of action in the suits in which the former
attachments had been issued, and the value of such attachments
is therefore an unknown quantity. In the case at bar, therefore,
we see no way in which the lien created by the levy of the execu-
tion in the case of *Mary Minor v. Agee* was dissolved, invalidated
or in any way affected by the subsequent adjudication in insol-
vency. Indeed, this conclusion has been declared in the recent
case of *Hefner v. Herron,* 117 Cal. 473. That case involved sec-
tion 21 of the subsequent insolvent act of 1895. That section
provided for an enumerated instance where a dissolution of an
attachment by an adjudication in insolvency should also dissolve
and set aside an execution levied under certain circumstances;
and it was there contended that a certain execution was set aside
by an insolvent proceeding. But the court said: "The section
does not provide for dissolving a lien existing by virtue of final
process, except in the one enumerated instance. In the absence
of any statutory provision, a levy upon property by virtue of an
attachment or execution creates an interest in the property
superior to the rights of the assignee in insolvency, and only an
express provision to that effect will make the proceedings in in-
solvency paramount to such a lien." The case of *Beamer v. Free-
man,* 84 Cal. 554, is not controlling here.

In the case at bar there was no charge of actual fraud, and no claim that the insolvent, Agee, had wrongfully done any affirmative act with intent to give preference to any creditor. His conduct was innocent, within the rule elaborately stated by the supreme court of the United States in *Wilson v. City Bank*, 17 Wall, 473.

The point here involved is presented by the demurrer to the complaint, which was overruled, and upon the findings; and the court below erred in holding that the insolvency proceeding dissolved the lien of the levy under the judgment of Mary Minor. The judgment should have been for appellant.

The judgment appealed from is reversed.

Temple, J., and Henshaw, J. concur.

Hearing in Bank denied.